# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| ELMER EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:  3:07-CV-247 |
| | ) | (VARLAN/GUYTON) |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Elmer Larry Edwards ("Plaintiff Edwards") filed this action under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.§ 1001, *et seq*.,against

defendants, Life Insurance Company of North America ("Defendant LINA"), Transamerica

Corporation Disability Income Plan ("Defendant Plan"), and Aegon USA, Inc. ("Defendant

Aegon") (hereinafter Defendant LINA and Defendant Plan will be collectively referred to

as "Defendants").  The case is before the Court on Plaintiff Edwards' Motion for Judgment

on the Administrative Record [Doc. 30], Defendant LINA's Motion for Judgment on the

Record [Doc. 26], and Defendant Plan's Corrected Motion for Judgment on the

Administrative Record [Doc. 40].  The Court has carefully considered the parties' briefs

[Docs. 8, 9, 10], as well as the entire administrative record.  For the reasons set forth herein,

the Court will grant in part and deny in part Plaintiff Edwards' motion for judgment on the

administrative record and grant in part and deny in part Defendants LINA and Plan's

respective motions for judgment on the record.

# I.    RELEVANT FACTS

## A.    Relevant Claim History

From August of 1972 until April of 1990, Plaintiff Edwards was employed as an internal auditor by Transamerica. [A.R. at 668.]   On May 11, 1990, Plaintiff Edwards submitted a claim for temporary disability benefits with the Prudential Insurance Company ("Prudential") due to Crohn's Disease. [A.R. at 667.]  In 1990, Prudential was the third party claims administrator of the Defendant Plan. [A.R. at 416.]  Plaintiff Edwards' employer, Transamerica, which was later bought out by Defendant Aegon, provided the funding source for benefits for Defendant Plan. [A.R. at 5, 469, 731.]   On June 22, 1990, Prudential determined that Plaintiff Edwards was eligible for long term disability ("LTD") benefits under the Defendant Plan.  [A.R. at 669-70.]  Plaintiff Edwards continuously received LTD benefits until January 1, 2002.  [A.R. 466.]

On January 7, 2002, Prudential notified Plaintiff Edwards that his LTD benefits were suspended effective January 1, 2002, for failure to respond to Prudential's requests for proof of his continued disability. [A.R. at 466.]  Plaintiff Edwards apparently later complied with Prudential's requests as his benefits were not terminated, but he later risked termination of his LTD benefits for again failing to respond to Prudential's requests for proof of continued disability resulting in suspension of benefits effective May 1, 2005. [A.R. at 461.]  Plaintiff Edwards apparently later complied with Prudential's requests for information, and his LTD benefits were not terminated by Prudential. [A.R. at 416.]

2

On January 1, 2006, Defendant LINA replaced Prudential as the third party claims administrator for Defendant Plan. [A.R. at 416.] As claims administrator, Defendant LINA was responsible for providing "ongoing screening of claims to determine whether benefits are payable in accordance with the terms of the Plan." [A.R. at 9.] Defendant Plan only provides disability income benefits for participants "only during periods when he or she is Disabled." [Doc. 40-3 at 27.] The plan document states:

> "Disabled" shall mean (and subject to the last sentence of this Section 2.9), with respect to a Covered Participant, that, as a result of physical or mental impairment, he or she is prevented from performing the usual duties of his or her occupation; provided, however, that after a Covered Participant has been Disabled for a period of 24 continuous months, he or she shall continue to be considered Disabled only if and while:
>
> (a) In the case of a Covered Participant whose disability is caused by other than a mental or nervous disorder, he or she is unable to perform the essential functions of any business or occupation for which he or she is reasonably suited by education, training, experience and physical ability, provided that if at any time the Committee (in its sole discretion) determines that the Covered Participant could, with rehabilitation or training, become able to perform the essential functions of any business or occupation (which pays at least 80% of his or her pre-disability Monthly Salary), the Covered Participant no longer will be considered Disabled. . . . The determination of whether a Covered Participant is Disabled shall be made by the Committee (or its delegate) in its sole discretion.

[Doc. 40-3 at 10-11.]

Because Plaintiff Edwards failed to respond to previous requests for a Disability Questionnaire and accompanying authorization [A.R. at 415, 416], Disability Claim Manager Gretchen Deter ("Ms. Deter") informed Plaintiff Edwards in a letter dated April 26, 2006, that "your claim will be closed and no further benefits will be payable." [A.R. at 407.]

3

Plaintiff Edwards then submitted the previously requested information to Ms. Deter on May 31, 2006, and appealed the termination decision on June 1, 2006. [A.R. at 390, 391-96.] In the questionnaire, Plaintiff Edwards listed "Crohn's, Diabetic, neuropathy, heel spurs, high blood pressure" as the primary physical and/or mental conditions that prevented him from working. [A.R. at 393.]

On June 14, 2006, Ms. Deter sent Plaintiff Edwards a letter upholding the prior decision to deny his claim. [A.R. at 276-78.] In the denial-of-claim letter, Ms. Deter stated:

As you are aware, your policy contains the following provision:

*"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*
*1) unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; and 2) unable to earn 80% or more of his or her Covered Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been paid for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*
*1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, training, or experience, and*
*2. unable to earn 80% or more of his or her Indexed Earnings."*

[A.R. at 276.] After discussing the medical evidence submitted by Plaintiff Edwards, the letter continued, "[w]e have reviewed the information you provided to us and must uphold our prior decision to deny your claim. As stated above, none of your physicians impose restrictions and limitations keeping you from working in any occupation." [A.R. at 277.] Additionally, the letter stated:

Also, you are working as the Business Manager at Camp Buck Toms in Rockwood, TN. Your job runs from December to September and some of

4

your responsibilities include helping all troops register for camp, planning out merit badge schedules for every camper, dealing with all payment issues for coming to camp and a myriad of other business activities. These duties are consistent with sedentary functionality and further support our contention that your condition would not prevent you from sedentary employment.

[A.R. at 277.]

After the denial of his claim, Plaintiff Edwards retained counsel, who then appealed the decision to deny Plaintiff Edwards' claim on August 16, 2006. [A.R. at 263, 269.] Plaintiff Edwards submitted additional information and evidence in support of his appeal, including a letter from Gary W. Leitch of the Boy Scouts of America, a letter from Dr. Roshan Matthews, a letter from Dr. Tadgh M. Hart ("Dr. Hart"), a written history of Plaintiff Edwards' medical condition, a medication list, and a DVD video statement by Plaintiff Edwards. [A.R. at 216, 230, 241-42.] In a letter dated November 21, 2006, Appeal Claim Manager Melissa Buys ("Ms. Buys") stated:

> While we respect the opinion of all medical providers, in order to be eligible for Long Term Disability benefits, we must be provided with clinical documentation upon which their opinions are based. Based upon the current information on file, you do not meet the definition of total disability. Therefore, following a thorough review of the medical evidence submitted on your behalf, we must uphold our prior decision to deny your claim.

[A.R. at 201-03.]

Plaintiff Edwards appealed the decision, which Ms. Buy confirmed in a letter dated January 22, 2007. [A.R. at 136.] In support of the appeal, Plaintiff Edwards submitted a vocational assessment by Michael Galloway along with the curriculum vitae and deposition

5

transcript of Dr. Hart. [A.R. at 53, 142, 147.] In a letter dated April 24, 2007, Appeal Claim

Manager Nancy J. Ippolito ("Ms. Ippolito") stated:

> We have not received clinical data to show how Mr. Edwards would be
> impaired from performing his own sedentary demand occupation or to support
> his need to lay down through out the day. His conditions are maintained with
> medication and an ilistomy bag [sic]. While we understand that Mr. Edwards
> may need to empty his bag frequently we have not received documentation to
> show how this would impede him from working. We are therefore affirming
> our denial of his Long Term Disability benefits.

[A.R. at 28-30.]

Plaintiff Edwards then filed suit on May 18, 2007, in the Chancery Court for Knox

County, Tennessee. [Doc. 1-2.] The suit was then removed to federal court on June 16, 2007.

[Doc. 1.]

### B.      Dr. Sarkis J. Chobanian

On October 19, 1990, Dr. Sarkis J. Chobanian ("Dr. Chobanian"), Plaintiff Edwards'

gastrointestinal physician, submitted a narrative in response to Prudential's request for

information regarding Plaintiff Edwards. [A.R. at 638.] Dr. Chobanian stated that Plaintiff

Edwards has "refractory Chrohn's disease of both the jejunum, ileum, and colon." [*Id.*]

Despite having three operations for Crohn's disease, Dr. Chobanian stated that the disease

recurred in the colonic remnant. [*Id.*] As a result, Plaintiff Edwards suffers from chronic

abdominal pain and intractable diarrhea, resulting in malnourishment. [*Id.*] Dr. Chobanian

described Plaintiff Edwards as "severely limited because of the intractable, uncontrollable

diarrhea . . . despite maximal medical therapy to control his stool volume and frequency" and

"essentially housebound." [*Id.*] In his narrative, Dr. Chobanian further described the

6

possibility of Plaintiff Edwards' return to work "at the present time or in the near future" as "quite pessimistic." [*Id.*] Plaintiff Edwards continued to make periodic visits with Dr. Chobanian. [A.R. at 482-3, 486.] By March 3, 1998, Dr. Chobanian reported that Plaintiff Edwards was "stable in terms of his Crohn's disease with the usual cramping, abdominal pain, diarrhea without bleeding." [A.R. at 482.] Dr. Chobanian noted Plaintiff Edwards' "[v]ery lengthy list of medicines" and recommended Plaintiff Edwards "[c]ontinue present drug therapy" prescribed by another physician, Dr. Stephen Hanauer. [A.R. at *Id.*]

## C. Dr. Tadhg M. Hart

During the period from May 24, 2004, to May 1, 2006, Plaintiff Edwards periodically visited Dr. Tadgh M. Hart ("Dr. Hart"), medical internist. [A.R. 309-342.] On August 23, 2005, Dr. Hart performed an annual comprehensive evaluation of Plaintiff Edwards' "multiple medical problems." [A.R. at 337.] Dr. Hart noted Plaintiff Edwards' "history of diabetes mellitus type 2 which is exacerbated by Prednisone use for Crohn's disease," "history of perpheral neuropathy with motor and sensory abnormalities mostly in the plantar regions bilaterally and distal dorsal aspect of the feet," and "history of osteoporosis." [*Id.*] Dr. Hart also noted Plaintiff Edwards' "long history of mood disturbance defined as depression with intermittent depressed mood" that was "in a fairly stable state at this point." [*Id.*] Dr. Hart also described Plaintiff Edwards' treatment for Crohn's disease, including a "subtotal colectomy in 1990 which was preceded the year before with a small bowel resection and ileostomy." [*Id.*] Dr. Hart noted that Plaintiff Edwards was "presently on Prednisone 5 mg a day but no other medications for Crohn's disease" and that "[h]e has been

7

relatively stable." [*Id.*] Dr. Hart also noted that despite his history of gastrointestinal ("GI")

bleeding, Plaintiff Edwards denied "recent evidence of GI bleed." [*Id.*] Dr. Hart further

noted that Plaintiff Edwards had a history of chronic fatigue that remained despite monthly

injections to improve his B12 level. [*Id.*] In his physical examination, Dr. Hart found:

> **GI**: Soft and nontender. Remarkable for ileostomy without erythema around
> the stoma. Bowel sounds present with normal motility. No Murphy's sign or
> right upper quadrant tenderness, rebound tenderness, ascites, pulsatile mass,
> bruit or organomegaly. Normal external inguinal rings without herniation.
> Rectal exam reveals normal anus and perineum without hemorrhoids, fissures,
> or mass. Heme negative feces.

[*Id.*] Dr. Hart then discussed diet, exercise, and  medications with Plaintiff Edwards. [*Id.*]

On September 22, 2005, Dr. Hart administered a plantar fasciitis injection to Plaintiff

Edwards. [A.R. at 332-33.] Plaintiff Edwards received additional plantar fasciitis injections

from Dr. Hart on September 29, 2005; October 13, 2005; December 22, 2005; December 29,

2005; January 5, 2006. [A.R. at 313, 315, 316, 319, 326-27, 329-30.] On October 20, 2005,

Plaintiff Edwards underwent an extraction of toenail procedure. [A.R. at 324.] On October

20, 2005, Plaintiff Edwards also underwent a "digital nerve block" procedure. [A.R. at 322.]

In a letter dated July 3, 2006, Dr. Hart wrote to Ms. Deter regarding Plaintiff

Edwards' disability claim. [A.R. at 247.] Dr. Hart stated that Plaintiff Edwards had severe

Crohn's disease in addition to metabolic syndrome manifested by diabetes mellitus requiring

insulin therapy, hypertension, dyslipidemia, osteoporosis, and hypocalcemia. [*Id.*] Dr. Hart

further stated that Plaintiff Edwards only worked part-time and sporadically with Boy Scout

Troops because fatigue and his inability to perform full-time occupation. [*Id.*] Dr. Hart concluded that Plaintiff Edwards met Defendant Plan's definition of "Disabled." [*Id.*]

On December 11, 2006, Plaintiff Edwards' counsel examined Dr. Hart under oath. [A.R. at 173.] Dr. Hart explained that Plaintiff Edwards has Crohn's disease, "a severe inflammatory bowel disease that is often autoimmune associated, meaning that your immune system can misidentify some of your own tissue and attack it, so to speak, and cause intermittent inflammation." [A.R. at 178.] Dr. Hart testified that Plaintiff Edwards' treatment for Crohn's Disease involves immunosuppressive agents, which has resulted in the side effects of diabetes mellitus, osteoporosis, immune dysfunction, peptic ulcer disease with bleeding, liver disease, and sometimes fluid retention, hypertension, peripheral neuropathy, dyslipidemia, and susceptibility to bacterial infections. [A.R. at 179-80.] Dr. Hart also noted that Plaintiff Edwards had non-alcoholic fatty liver disease, chronic hepatitis, unexplained weight loss, depression, and has had recurrent pain and bleeding. [A.R. at 180-81.] Dr. Hart also testified that Plaintiff Edwards has chronic fatigue that requires him to lay down every few hours. [A.R. at 186.] Due to the side effects from medication, Dr. Hart testified that Plaintiff Edwards "cannot be around people in enclosed environment, especially in an office situation where he would be susceptible to respiratory transmitted diseases." [A.R. at 187.] Dr. Hart further stated he would be less susceptible to diseases at the Boy Scout camp because "he is mostly outdoors and is not confined to small areas." [*Id.*]

Dr. Hart testified that Plaintiff Edwards' multiple medical problems "tend to be severe and limiting." [A.R. at 187.] Because much of his bowel has been removed, Plaintiff

9

Edwards requires an ileostomy bag. [A.R. at 188.] Dr. Hart testified that the ileostomy bag results in "special needs" and "prevents him from performing a lot of work in which he would be required to lift a lot of things or in a place where he couldn't change his ostomy bag in times when he would have a lot of diarrhea or bleeding." [A.R. at 188.] Dr. Hart also stated that Plaintiff Edwards "would not be able to work" because of his active Crohn's Disease resulting in recurrent bleeding and abdominal pain. [A.R. at 188.] Additionally, Dr. Hart testified about Plaintiff Edwards' (1) inability to be around others in a confined space due to his immunosuppression; (2) disability from any kind of walking capacity because of neuropathic pain and plantar fasciitis; (3) "crippling" fatigue permitting him to work no more than two hours in a row and requiring him to lie down and sleep when needed; and (4) medications that "contributed to clouding of consciousness and sometimes interfering in making good judgments and decisions." [A.R. 188-89.] Dr. Hart testified that Plaintiff Edwards "would be very poor at regular attendance at work due to his disease process." [A.R. at 189.] Dr. Hart also discussed the difficulty of discerning through chart review "[i]nternal medicine problems such as Crohn's Disease and diabetes and all the associated problems." [A.R. at 191.] Dr. Hart concluded that Plaintiff Edwards was disabled. [A.R. at 193.]

**D.    Dr. Kendale L. Ritchey**

On May 26, 2004, Plaintiff Edwards came to podiatrist, Dr. Kendale L. Ritchey ("Dr. Ritchey"), complaining of a sore on the bottom of his right great toe. [A.R. at 304-05.] After an examination, Dr. Ritchey assessed Plaintiff Edwards as having hyperdorsiflexion

10

interphalangeal joint right great toe, accessory ossicle right great toe, exostosis right great toe, and overlying ulceration right great toe. [A.R. at 305.]  After trying more conservative treatments, Plaintiff Edwards underwent foot surgery with Dr. Ritchey to address "Hallux intraphalangeal deformity with underlying ulceration at the intraphalangeal joint of right great toe and plantar fascitis of left heel" on August 13, 2004.  [A.R. at 296-98, 303, 307-08.] After the procedure, Plaintiff Edwards had periodic visits with Dr. Ritchey until October 15, 2004, when it was recommended that Plaintiff Edwards could "[r]eturn to all activity with shoe gear as tolerated, see him as needed, call if any questions or problems arise." [A.R. at 300.]

On January 30, 2006, Dr. Ritchey examined Plaintiff Edwards for complaints of severe pain in both of his heels. [A.R. at 306.]  Dr. Ritchey assess Plaintiff Edwards as having "bilateral plantar fasciitis" and "bilateral plantar infracalcaneal spurring." [*Id.*]  Dr. Hart noted Plaintiff Edwards' previous "conservative treatment" of injections by Dr. Hart and discussed other treatments to address the foot problems. [*Id.*]

### E.    Baptist West Hospital - March of 2006

On March 8, 2006, Plaintiff Edwards saw Dr. Stephen Russell ("Dr. Russell") at the Baptist Hospital West's Emergency Room. [A.R. 383-89.]  Plaintiff Edwards complained of an allergic reaction and chest pain.  [A.R. at 383.]  Plaintiff Edwards was admitted to the hospital, though Dr. Russell noted that his condition had improved. [A.R. at 387.]  On March 9, 2006, after radiographic interpretation, Dr. Russell found Plaintiff Edwards' chest to have normal lung markings, heart size, great vessels and mediastinum, and soft tissues along with

11

no bony lesions.  Dr. Russell's impression was "normal/no acute disease" and found no indications of an active cardiac or pulmonary process.  [A.R. at 380, 388.]

On March 9, 2006, Dr. Andrew Sugantharaj ("Dr. Sugantharaj") dictated a report addressing Plaintiff Edwards' chest pain complaints. [A.R. at 366.]  Dr. Sugantharaj described Plaintiff Edwards as experiencing "a severe redman reactions with the erythema, edema, piloerection, feeling hot on top of his head and over his body and his upper extremities and chest." [A.R. at 366.]  Dr. Sugantharaj recommended further testing to address Plaintiff Edwards' chest pain complaints. [A.R. at 367.] On March 9, 2006, Plaintiff Edwards underwent stress testing with Dr. Robert P. Martyn ("Dr. Martyn"). [A.R. at 382.] Plaintiff Edwards underwent gated exercise treadmill testing, which was significant for development of chest pain with exertion. [A.R. at 369.]  Dr. Martyn found that "[s]tress images demonstrate normal left ventricular cavity dimensions" and "mild inferior photopenia." [A.R. at 382.]  Dr. Martyn concluded "[p]robably abnormal study suggesting a very mild degree of inferior reversibility consistent with ischemia." [A.R. at 382.]  On March 10, 2006, Plaintiff Edwards was discharged from the hospital. [A.R. at 364.]  Dr. Sugantharaj noted that Plaintiff Edwards was "[h]aving some slight discomfort from his Crohn's but is otherwise stable and ready for discharge today with the above mentioned medications and followup."  [*Id.*]  On March 17, 2006, Plaintiff Edwards underwent more stress testing with Dr. John Arnett ("Dr. Arnett"). [A.R. at 381.] Dr. Arnett found the stress test negative for ischemia on the basis of electrocardiogram criteria and systems. [*Id.*]  Dr.

Arnett noted "[o]ccasional premature ventricular contractions" and stated "[w]ill await the results of the nuclear scans." [*Id.*]

## F. Dr. Mark D. Anderson

In a letter dated May 10, 2006, gastroenterologist, Dr. Mark D. Anderson ("Dr. Anderson"), stated that Plaintiff Edwards was under his care for ileocolonic Crohn's disease. [A.R. at 293.] Dr. Anderson noted that Plaintiff Edwards was evaluated on January 24, 2006, and underwent capsule endoscopy on February 28, 2006. [*Id.*] After a visit on April 13, 2006, Dr. Anderson prescribed "maintenance medication for Crohn's disease." [*Id.*] Dr. Anderson further stated that Plaintiff Edwards would require office visits "at least every several months for treatment of his Crohn's disease." [*Id.*]

## G. Michael T. Galloway

At the request of Plaintiff Edwards' counsel, a vocational consultant, Michael T. Galloway ("Mr. Galloway"), prepared a vocational assessment for Plaintiff Edwards. Mr. Galloway's assessment is based on review of Plaintiff Edwards' DVD statement, speaking with Plaintiff Edwards via telephone, and reviewing records supplied by Plaintiff Edwards' counsel. [A.R. at 65-66.] After summarizing Plaintiff Edwards' educational, vocational, and medical history, Mr. Galloway concluded that Plaintiff Edwards "does not possess the residual functional capacity to perform the material duties of his regular occupation or any qualified alternative . . . [or] of any occupation." [A.R. at 71.] Mr. Galloway further stated that Plaintiff Edwards "certainly does not possess the residual functional capacity to earn 80% or more of his earnings." [*Id.*] Discussing Defendant LINA's conclusion that Plaintiff

13

Edwards can perform sedentary employment, Mr. Galloway stated that Plaintiff LINA's "opinion does not factor in the need for Mr. Edwards to lie down and rest due to chronic fatigue, his need for frequent restroom breaks to empty his pouch on account of chronic diarrhea, the effects of medication that contribute to 'clouding of consciousness' and interfere in the [sic] his ability to make good judgments and decisions." [A.R. at 71.] According to Mr. Galloway, Plaintiff Edwards could not perform the occasional standing or walking required of sedentary employment due to his neuropathic pain and plantar fasciitis. [A.R. at 71.] Mr. Galloway also discussed the undue hardship on employers trying to accommodate Plaintiff Edwards with frequent breaks to lie down and other significant interruptions in attendance for his medical conditions. [A.R. at 71.]

### H.    Medical Reviewers

On June 14, 2006, Debra Keely ("Ms. Keely"), a reviewer for Defendant LINA, noted that "new medical received fails to support no work." [A.R. at 280.] After reviewing medical records submitted up to that date, Ms. Keely wrote that there was "no description of any impact on function" and that Plaintiff Edwards had "only some slight discomfort from Crohn's." [*Id.*]

On November 8, 2006, a review by Dr. Seiferth for Defendant LINA noted that Plaintiff Edwards' "frequent need to empty ileostomy however functions as a Boy Scouts advisor." [A.R. at 209.]  Dr. Seiferth also wrote "stress test abnormality not borne out by subsequent heart catheterization." [*Id.*]  The reviewer concluded that the medical records

14

failed to document a functional impairment to support a conclusion that Plaintiff Edwards could not work in sedentary employment. [*Id.*]

On March 15, 2007, Vincent Engel ("Mr. Engel") reviewed Mr. Galloway's vocational assessment report for Defendant LINA. Mr. Engel wrote:

> I reviewed the vocational report dated 2/21/07 by Michael Galloway. He describes claimant's medical condition from reports from various physicians. Assuming that the medical information in the report is accurate, then the claimant would be unable to perform any occupation. According to the report claimant must lie down for a significant portion of the day. This would not allow him to down a full time position, even with substantial accommodations.

[A.R. at 131.]

On April 2, 2007, Rhea Valentine ("Ms. Valentine") reviewed Plaintiff Edwards' medical records and history. [A.R. at 32-33.] According to Ms. Valentine, Dr. Hart's deposition testimony that Plaintiff Edwards was immunsuppressed and spent most of his time outdoors at Boy Scout camp contradicted Mr. Leitch's statement that Plaintiff Edwards was provided a climate-controlled office to work. [A.R. at 32.] Ms. Valentine wrote that Plaintiff Edwards "would be exposed to much more than resp. diseases if he spent his time mostly outdoors at a boy scout camp in the woods." [A.R. at 33.] Ms. Valentine stated that Plaintiff Edwards' medical conditions were maintained by medication and that patients with "ileostomy bags are able to care for their ostomies in a normal fashion as those who do not." [*Id.*] Ms. Valentine also questioned whether Plaintiff Edwards was disabled from any kind of walking capacity because Dr. Hart stated that Plaintiff Edwards spent most of his time

15

outdoors.  [*Id.*]  Ms. Valentine concluded that the medical evidence did not "support a psych or physical impairment from work." [*Id.*]

## I.    Social Security Disability Benefits

In December of 1990, the Social Security Administration determined that Plaintiff Edwards was not entitled to disability benefits based on the claim he filed, which was upheld on April 29, 1991, after a request for reconsideration by Plaintiff Edwards. [A.R. at 616-17, 671.]  However, an administrative law judge ("ALJ") determined on March 6, 1992, that Plaintiff Edwards was entitled to Social Security disability benefits. [A.R. at 590-96.]  The ALJ found that "[t]he severity of Mr. Edwards combined exertional and nonexertional limitations and related symptomatology precludes a residual functional capacity for even sedentary work on a sustained basis." [A.R. at 571-72.]  After Plaintiff Edwards informed Prudential of the favorable decision from the Social Security Administration, Prudential requested that he send $11,700 due to the overpayment of LTD benefits. [A.R. at 581.]  This amount was eventually recovered by applying a net monthly benefit to the LTD benefits until the full amount of overpayment was recovered. [*See* A.R. at 532.]  On September 18, 2002, the Social Security Administration determined that Plaintiff Edwards was still disabled. [A.R. at 435-36.]

## J.    Camp Buck Toms

In May of 2006, Plaintiff Edwards worked as "Business Manager" for Camp Buck Toms, a Boy Scouts of America camp located near Knoxville, Tennessee. [A.R. 400, 404.] According to the Camp Buck Toms' website, Plaintiff Edwards was "responsible for helping

16

all troops register for camp, planning out merit badge schedules for every camper, dealing with all payment issues for coming to camp, and a myriad of other business related activities." [A.R. at 404.] The Boy Scouts website listed Plaintiff Edwards as the contact for those interested in coming to Camp Buck Toms. [A.R. 401.]

In a letter dated June 23, 2006, Greg Leitch ("Mr. Leitch"), Council Program Director with the Great Smokey Mountain Council Boy Scouts of America, wrote to Ms. Deter regarding Plaintiff Edwards' disability claim. [A.R. at 243.] Mr. Leitch stated that Plaintiff Edwards "gives volunteer service as our camp Business Manager and Registrar." [*Id.*] Mr. Leitch stated that it accommodated Plaintiff Edwards' physical limitations by providing: (1) a restroom 30 feet away from where he sleeps because he has to rise frequently during the night to empty his ileostomy pouch due to diarrhea and "rapid transit" of food; (2) a restroom 15 feet from of his office area because of his diarrhea (he has to empty his pouch at least 12 times per day); (3) special meals prepared to meet his dietary needs and restrictions; (4) a climate controlled bedroom with refrigerator; (5) a climate controlled space in the camp office; (6) a full time physician on-site to treat Plaintiff Edwards' conditions. [A.R. at 243-44.]

In a DVD interview recorded on behalf of Plaintiff Edwards, Mr. Leitch stated that Plaintiff Edwards worked at Camp Buck Toms as business manager, chaplain, and counselor. Mr. Leitch testified that Plaintiff Edwards could work effectively for approximately three to four hours before needing to lay down. Mr. Leitch also stated that Plaintiff Edwards was provided with his own air-conditioned quarters located twenty feet from the dining facilities

and fifteen feet from the camp office while working as a member of the summer staff. While at the camp, Plaintiff Edwards was permitted to use a vehicle, had special meals prepared by the cooking staff, and had constant care by on-site physicians while at camp. Mr. Leitch further stated that Plaintiff Edwards prepared the merit badge schedule at his convenience and that others performed regular accounting and bookkeeping duties though Plaintiff Edwards would review the work as a "second set of eyes." [A.R. 732.]

### K. Roshan Matthews Letter

On June 26, 2006, Dr. Roshan Matthews ("Dr. Matthews") sent a letter to Ms. Deter regarding Plaintiff Edwards' disability claim. [A.R. at 270-71.] Dr. Matthews met Plaintiff Edwards during a voluntary week as the camp physician at Camp Buck Toms. [A.R. at 270.] Dr. Matthews emphasized that he had no financial, personal, or other relationship with Plaintiff Edwards and that he was not writing to "quantify his physical limitations or level of disability." [*Id.*] Rather, he stated that he thought Plaintiff Edwards appeared chronically fatigued from emptying his colostomy bag and had obvious underlying health problems. [*Id.*] Dr. Matthews also stated that he could "understand why he has been on disability for 16 years" and that it was not in Plaintiff Edwards' nature to "lay still and quit." [*Id.*]

### L. Plaintiff Edwards' DVD Statement

In support of his appeal, Plaintiff Edwards submitted a DVD with a personal interview and statement by his attorney. In the DVD, Plaintiff Edwards provides background information about his education and work history. Plaintiff Edwards then discussed his medical condition of Crohn's Disease, which has resulted in the need to remove three-

18

quarters of his gastrointestinal tract, the need for an ileostomy pouch, and the need for a feeding tube during an 18-month period. Plaintiff Edwards also mentioned other health problems related to the treatment for Crohn's disease, including diabetes, joint pain, and fatigue. He described the chronic pain in his body as occurring in his gut, feet, and joints "every minute I'm awake." Plaintiff Edwards described staying in bed for 24-hours prior to his interview due to the loss of energy and fatigue. In explaining his work with the Boy Scouts since 1993, Plaintiff Edwards described it as a means of "helping people" by staying productive and keeping depression away despite his health conditions. He also discussed the accommodations provided to him while at Boy Scout camp, such as being provided an air-conditioned office, having access to a refrigerator, using his vehicle when needed, and lying down in the afternoon when fatigued. Despite having the title "Business Manager," Plaintiff Edwards stated that his main job at camp was being a chaplain and that he did not work on the business-end details for the camp. During his interview, Plaintiff Edwards also described the financial strain resulting from his health conditions and the denial process regarding his LTD claim. After Plaintiff Edwards' interview concluded, his attorney included a statement reviewing Plaintiff Edwards' health conditions and treatments. [A.R. at 731.]

## II.  ANALYSIS

Based upon Plaintiff Edwards' motion for judgment on the administrative record and supporting memorandum, he raises four general claims under ERISA: (1) a breach of fiduciary duty; (2) denial of benefits under 29 U.S.C. § 1132(a)(1)(B); (3) a procedural

violation claim under 29 U.S.C. § 1133; and (4) statutory penalties for a denial of access to plan documents under 29 U.S.C. § 1132(c)(1) . The Court will address each claim in turn.

### A.     Breach of Fiduciary Duty

Plaintiff Edwards first contends that Defendant LINA breached its fiduciary duties under ERISA when it denied him access to certain information requested by his attorney and failed to give him an opportunity to address the conclusion of "paper reviewers" prior to the final denial in this case. Defendant Plan contends that Plaintiff Edwards cannot have a breach of fiduciary duty claim because he is essentially pursuing a denial of benefits claim. Likewise, Defendant LINA contends that Plaintiff Edwards cannot pursue a stand alone breach of fiduciary duty claim because his claim is one for benefits, which is governed under specific provisions of ERISA.

In his supporting brief, Plaintiff Edwards discusses the general fiduciary duties provided by ERISA in 29 U.S.C. § 1104 and claims that Defendant LINA breached those duties. In *Marks v. Newcourt Credit Group, Inc.*, a plaintiff similarly claimed a breach of fiduciary duty under 29 U.S.C. § 1104. 342 F.3d 444, 453 (6th Cir. 2003). When the plaintiff in *Marks* appealed the district court's dismissal of his breach of fiduciary claim as being duplicative of his denial of benefits claim, the Sixth Circuit affirmed the district court based on both Supreme Court and Sixth Circuit precedent. In *Varity Corp. v. Howe*, the Supreme Court recognized that the "catchall provisions" in 29 U.S.C. § 1132 "act as a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy." 516 U.S. 489, 512 (1996). In *Wilkins v.*

20

*Baptist Healthcare Sys., Inc.*, the Sixth Circuit viewed this Supreme Court precedent as clearly limiting the applicability of the "catchall provisions" to those "who may not avail themselves of § 1132's other remedies." 150 F.3d 609, 615 (6th Cir. 1998). The Sixth Circuit then concluded that the plaintiff could not recover damages for an alleged breach of fiduciary duty because ERISA provided him remedy under 29 § 1132(a)(1)(B). *Id.* In light of *Howe* and *Wilkens*, the Sixth Circuit in *Marks* determined that, likewise, the plaintiff could not pursue a breach of fiduciary duty claim under 29 U.S.C. § 1104 when 29 U.S.C. § 502(a)(1)(B) provided a remedy for his alleged injury. *Marks*, 342 F.3d at 454.

The Sixth Circuit subsequently clarified "that under some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3)." *Gore v. El Paso Energy Corp.*, 477 F.3d 833, 839 (6th Cir. 2007). In *Gore*, the Sixth Circuit concluded that the plaintiff could pursue a breach of fiduciary duty claim against his employer for misrepresenting the scope of policy coverage in addition to his denial of benefits claim against the claims administrator. *Id.* at 841-42. In *Gore*, the Sixth Circuit distinguished between cases where the alleged breach of duty was against an employer, who did not control the claims, and the claims administrator, who is solely responsible for the denial of benefits. *Id.* at 842 ("The question would be different had Gore brought his misrepresentation claim under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty based on a misrepresentation by [the claims administrator], the fiduciary who controlled the claims.") Thus, 29 U.S.C. § 1132(a)(1)(B) would have provided a sufficient remedy had the misrepresentation claim been against the claims administrator who was solely responsible

21

for the denial of benefits. *Id.* In *Pfahler v. Nat'l Latex Prods. Co.*, the Sixth Circuit noted

that *Gore* permitted plaintiffs to simultaneously obtain relief under § 1132(a)(1)(B) and §

1132(a)(3), "but only because recovery under the former would not provide adequate relief."

517 F.3d 816, 834 (6th Cir. 2007).

In the present case, Plaintiff Edwards bases his breach of fiduciary duty claim on the

actions of Defendant LINA, namely the alleged denial of access to certain information

requested by his attorney and the failure to give him an opportunity to address the conclusion

of "paper reviewers" prior to the final denial in this case. For the alleged breach of fiduciary

duties under 29 U.S.C. § 1104, Plaintiff Edwards seeks reinstatement of benefits in this case.

However, such relief is already addressed by 29 U.S.C. § 1132(a)(1)(B), which provides:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
> (1) by a participant or beneficiary-- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Unlike *Gore*, the actions Plaintiff Edwards complains of were

those of Defendant LINA, the claim administrator responsible for his denial of benefits.

Thus, the Court finds that 29 U.S.C. § 1132(a)(1)(B) provides Plaintiff Edwards adequate

remedy for his alleged injury, namely the denial of benefits, and allows him to bring a

lawsuit to challenge the denial of benefits. Thus, "he does not have a right to a cause of

action for breach of fiduciary duty." *Wilkens*, 150 F.3d at 615. Accordingly, the Court will

grant Defendants' motions for judgment on the record to the extent Plaintiff Edwards seeks

a breach of fiduciary duty claim.  Though Plaintiff Edwards cannot pursue a breach of fiduciary duty claim, the Court will consider his underlying arguments as they may be applicable to his remaining ERISA claims.

### B.  Denial of Benefits

#### 1.  Standard of Review

To the extent Plaintiff Edwards seeks review of the denial of his LTD benefits, his claim is governed by ERISA, 29 U.S.C. § 1132(a)(1)(B), which provides:

> A civil action may be brought– (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to further benefits under the terms of the plan.

In *Wilkins*, the Sixth Circuit established guidelines under which district courts must adjudicate ERISA cases brought before them for judicial review.  150 F.3d at 617-20. The Sixth Circuit explained that using summary judgment as a tool for the adjudication of ERISA cases does not properly comport with the purpose of summary judgment.  *Id*. at 619. Because the role of a district court in ERISA matters is not to determine whether issues of fact exist for trial, but to review the administrative record before it, district courts should more properly characterize their role in such proceedings as encompassing elements of both bench trials and summary judgments.  *Id*. at 619-20.  Following these guidelines, the district court proceeds by making adjudications on both fact and law as would occur in a bench trial while handling the matter in an expedited fashion resembling summary judgment.  *Id*.

Furthermore, *Wilkins*, following Supreme Court precedent, dictates this Court's standard of review in ERISA matters. Under *Wilkins*, this Court has two possible standards of review. If the trustees of an employee benefits plan do not have discretion to determine eligibility for benefits or to construe the terms of the plan in question, a court is required to undertake a de novo review of the administrators' decision. *Id*. at 613. On the other hand, where a benefits plan vests discretion with the administrators, a court may only disturb the administrators' decision if it finds the basis of such a decision to be arbitrary and capricious. *Id*. at 616 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Significantly, regardless of the standard of review applied to the administrators' decision, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).

There is some confusion over the applicable standard of review in this case. In his motion for judgment on the administrative record, Plaintiff Edwards states that "it is at this time unknown whether the de novo standard applies or the arbitrary and capricious standard applies." [Doc. 31 at 12.] Both Defendant Plan and Defendant LINA contend that the arbitrary and capricious standard applies based on the provisions of the plan document. [Docs. 27 at 5; 41 at 4-5.] After reviewing the plan document, the Court finds that the arbitrary and capricious standard is applicable. Section 6.3 of the plan document provides that the "ERISA Plan shall be administered by a Committee" and that the

24

"Committee shall have all powers and discretion necessary or appropriate to supervise the administration of the ERISA Plan and to control its operation in accordance with its terms." [Doc. 40-3 at 29.] Such powers include determining "all considerations affecting the eligibility of any individual to become or remain an [sic] Covered Participant of the ERISA plan," determining "the status and rights of Covered Participants," and entering "into an administrative services only contract with an appropriate service provider for the purpose of providing for the payment of claims and administering benefits under the ERISA plan." [Doc. 40-3 at 29-30.]

Additionally, the plan document's definition of "Disabled" further establishes the administrator's discretionary authority because "[t]he determination of whether a Covered Participant is Disabled shall be made by the Committee (or its delegate) in its sole discretion" [Doc. 40-3 at 11.] The Sixth Circuit has held that plan language reserved "discretionary authority" because that plan "reserve[d] for itself the discretionary authority to make factual determinations" with regard to whether an employee was disabled. *Noland v. Prudential Ins. Co. of Am.*, 187 F. App'x 447, 452 (6th Cir. 2006) (citations removed). Here, Defendant Plan accords precisely that kind of authority to the administrator. [See Doc. 40-3 at 11.] Thus, in accordance with Sixth Circuit case law, the language in the plan document is sufficient to accord discretionary authority to determine eligibility for benefits and to construe the terms of the Plan. Accordingly, the arbitrary and capricious standard of review applies. *Bruch*, 489 U.S. at 115.

Thus, the issue now before the Court is whether the termination of long-term disability benefits to Plaintiff Edwards constitutes an arbitrary and capricious decision based upon the administrative record. "This standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Killian*, 152 F.3d at 520 (citations and internal quotation marks removed). Applying this standard of review requires that the "decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Finally, "merely because [the Court's] review must be deferential does not mean [the Court's] review must also be inconsequential. . . . [F]ederal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Houston v. UNUM Life Ins. Co. of Am.*, 246 F. App'x 293, 299 (6th Cir. 2007) (alterations and omissions in original) (citation omitted).

### 2. Arbitrary and Capricious Decision

Plaintiff Edwards contends that Defendant LINA's denial of benefits decision was arbitrary and capricious. In particular, he points to Defendant LINA's reliance on the opinions of "paper reviewers" instead of a physical examination and Defendant LINA allegedly disregarding the opinion of its own rehabilitation specialist that he would be unable to perform any occupation if the medical information in the report was accurate. Defendant Plan counters that nothing in ERISA or the plan documents prohibit a file review in place of

26

a physical examination and that the administrative record adequately supports Defendant LINA's determination that Plaintiff Edwards could perform sedentary work. Defendant LINA argues that it gave appropriate recognition to Plaintiff Edwards' medical providers and reasonably considered the failure of Plaintiff Edwards' treating physicians to impose restrictions and limitations.

In the June 14, 2006, denial of benefits letter, Defendant LINA explained its decision because "none of your physicians impose restrictions and limitations keeping you from working in any occupation." [A.R. at 277.] In the November 21, 2006, denial of benefits letter, Defendant LINA stated that Plaintiff Edwards did not meet the definition of total disability because "the Medical Director failed to find significant findings to support the limitations that would preclude you from performing a sedentary occupation" and that "no examination records submitted . . . document[ed] the duration or frequency of your symptoms that would preclude you from working." [A.R. at 202.] In the April 24, 2007, denial letter Defendant LINA stated that "[w]e have not received clinical data to show how Mr. Edwards would be impaired from performing his own sedentary demand occupation or to support his need to lay down through out the day." [A.R. at 29.] Thus, Defendant LINA maintains that its decision was based on the alleged lack of "clinical data" showing that Plaintiff Edwards could not perform a sedentary occupation.

Plaintiff Edwards apparently implies that Defendant LINA had a conflict of interest because it "obviously hires the consultants, gathers evidence, makes the final decision and then determines whether it will pay the benefits." [Doc. 31 at 19.] In *Calvert v. Firstar Fin.,*

27

*Inc.*, the Sixth Circuit recognized that "we must take into consideration that fact that [administrator] is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and also the payor of those claims." 409 F.3d 286, 292 (6th Cir. 2005) (citation omitted). Though Plaintiff Edwards contends such a conflict exists in the present case, the Court finds that the administrative record does not support this conclusion. Defendant LINA's consulting agreement states:

> All liability for payment of claims made under the Plan shall rest with Employer. Consultant acts only as the provider of the services described in this Agreement and, with respect to Plan participants, acts only as the agent of the Employer.

[A.R. at 5.] Because Defendant LINA is not responsible for paying the claims, the circumstances in *Calvert* are distinguishable from the present case, and conflict of interest is not a factor weighing in favor of a finding of an arbitrary and capricious decision.

Plaintiff Edwards contends that it was arbitrary and capricious for Defendant LINA to rely solely on the opinions of "paper reviewers" and not to have a doctor physically examine him. In regard to physical examinations, the plan document provides that "the Claims Administrator or the Committee at its own expense shall have the right and opportunity to cause the Covered Participant to be examined or reexamined by a Medical Provider or other provider selected by the Claims Administrator or the Committee (as the case may be)." [Doc. 40-3 at 28.] The Sixth Circuit has held that the "decision to conduct a file review rather than a physical exam is just one more factor to consider in [the] overall assessment of whether [an administrator] acted in an arbitrary and capricious fashion."

28

*Calvert*, 409 F.3d at 295. Thus, while "reliance on a file review does not, standing alone, require the conclusion that [an administrator] acted improperly, . . . the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* In the present case, Plaintiff Edwards complained about the difficulties associated with his ileostomy bag, including the frequency he needed to empty his pouch, accidental spillage, and side effects such as fatigue. In her review, Ms. Valentine found "those patients who have ileostomy bags are able to care for their ostomies in a normal fashion as those who do not." [A.R. at 36.] In making this assessment, Ms. Valentine made a credibility determination regarding Plaintiff Edwards' complaints associated with the ileostomy bag. In *Smith v. Cont'l Cas. Co.*, the Sixth Circuit considered an administrator's "decision to *not* require an examination as part of the arbitrary and capricious review, especially because [the paper reviewer] made credibility determinations concerning [the claimant's] subjective complaints." *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263-64 (6th Cir. 2006). Likewise in the present case, the Court considers the lack of physical examination in this case as just one factor weighing in favor of finding that Defendant LINA acted in an arbitrary and capricious manner, particularly since Ms. Valentine made a credibility assessment regarding Plaintiff Edwards' subjective complaints regarding the effects of his ileostomy bag.

Another relevant factor is whether Defendant LINA considered the Plaintiff Edwards' multiple medications taken to control his symptoms and associated side effects. In *Smith*,

29

a claimant's treating physician provided a list of medications that, in the physician's opinion, made it difficult for the claimant to function under any circumstances while under the influence of the medications. 450 F.3d 253, 264-65. The Sixth Circuit concluded that the failure to adequately consider the number and nature of the medications the claimant was taking, in part, supported the argument that the disability determination was arbitrary and capricious. *Id.* at 265. In the present case, Dr. Hart testified at deposition that medications "clouded consciousness" and could interfere with his ability to make good judgments and decisions. [A.R. at 189.] Mr. Galloway, relying in part on Dr. Hart's deposition testimony, found that Defendant LINA's opinion that Plaintiff Edwards could perform sedentary employment failed to factor in the effects of his various medications. [A.R. at 59.] In her review for Defendant LINA, Ms. Valentine stated that Plaintiff Edwards' conditions are "chronic and maintained on meds as his Crohn's disease is on maintenance meds." [A.R. at 36.] However, her review does not address the side effects of those medications, including the "clouded consciousness" and interference with the ability to judge discussed by Dr. Hart and Mr. Galloway. [A.R. at 189.] In *Cooper v. Life Ins. Co. of N. Am.*, the Sixth Circuit found that the failure of the file reviewers to explain why they disregarded the opinions of the doctors who had in fact treated the claimant was arbitrary when the administrator relied on their opinions. 486 F.3d 157, 170 (6th Cir. 2007). While Ms. Valentine addressed Dr. Hart's opinions as to immunosuppression and respiratory diseases, the failure to address the other side effects of Plaintiff Edwards' medications on his ability to function weighs in favor

30

of finding an arbitrary and capricious decision to the extent Defendant LINA relied on Ms. Valentine's review.

Another consideration is whether it was arbitrary and capricious for Defendant LINA to determine that Plaintiff Edwards was not impaired due to a need to lay down throughout the day. In his vocational assessment, Mr. Galloway stated that Defendant LINA's opinion that Plaintiff Edwards could perform sedentary employment did not account for his "need to lie down and rest due to chronic fatigue." [A.R. at 60.] Defendant LINA's rehabilitation specialist, Mr. Engel, agreed:

> Assuming that the medical information in the report is accurate, then the claimant would be unable to perform any occupation. According to the report claimant must lie down for a significant portion of the day. This would not allow him to hold down a full time position, even with substantial accommodations.

[A.R. at 134.] After Defendant LINA requested that she review Plaintiff Edwards' medical documentation in light of Mr. Engel's recommendation, Ms. Valentine's review did not address Plaintiff Edwards' need to lie down even though the restriction was discussed in the reports of Mr. Galloway and Mr. Engel. [*See* A.R. 31, 32-33.] Though Ms. Valentine's opinion discussed Dr. Hart's deposition testimony about Plaintiff Edwards' immunosuppression and ability to be in the woods, she did not address Dr. Hart's other deposition statements about Plaintiff Edwards' chronic fatigue and resulting need to lay down. [*See* A.R. at 29, 35-36; 186.] Though in the administrative record, Ms. Valentine also did not address Dr. Hart's treatment notes from August 23, 2005, that stated:

He has a history of chronic fatigue but this has not changed recently. He was diagnosed with B12 deficiency and is presently on monthly injections with improvement in his B12 level. However, his fatigue has remained. . . . Fatigue, chronic without significant change.

[A.R. at 336.] In light of this medical documentation, Ms. Valentine's failure to discuss Plaintiff Edwards' chronic fatigue raises questions about whether she fully reviewed Plaintiff Edwards' medical record. *Smith*, 450 F.3d at 262-63. Administrators have a "duty to make certain that reliance on its experts' advice was reasonably justified under the circumstances." *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008). Due to Ms. Valentine's failure to address Plaintiff Edwards' need to lie down despite discussion about it by Dr. Hart at his deposition, identification of the issue in Mr. Engel's report, and evidence of chronic fatigue in Plaintiff Edwards' medical records, Defendant LINA's reliance on her review weighs in favor of finding an arbitrary and capricious decision.

To the extent Defendant LINA contends that it had not received "clinical data" to support Plaintiff Edwards' need to lay down through out the day, Dr. Hart's treatment notes discuss Plaintiff Edwards' history of chronic fatigue and attempted treatment with monthly B12 injections to rectify this fatigue. [A.R. at 337.] Though the treatments were unsuccessful in rectifying his fatigue, there is evidence that Plaintiff Edwards sought and received treatment to address his fatigue, which contradicts Defendant LINA's contention that there was no "clinical data" to support Plaintiff Edwards' need to lay down. To the extent this evidence supports Plaintiff Edwards' need to lay down and was not addressed by the medical

32

reviewers or Defendant LINA, this weighs in favor of finding that Defendant LINA did not employ a "deliberate, principled reasoning process" in its denial decision. *Baker*, 929 F.2d at 1144.

An additional factor for consideration is the lack of discussion about the Social Security Administration's ("SSA") determination that Plaintiff Edwards is "Disabled." The Sixth Circuit has recognized that "a disability determination by the Social Security Administration is relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan." *Glenn v. MetLife*, 461 F.3d 660, 667 (6th Cir. 2006). Though an administrator's failure to consider the SSA's finding of disability does not render the decision arbitrary *per se*, "it is obviously a significant factor to be considered upon review" and "is far from meaningless." *Glenn*, 461 F.3d at 669; *Calvert*, at 409 F.3d at 294; *see also Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 553 (6th Cir. 2008). The Sixth Circuit has noted that the SSA determination of disability provides support for the conclusion that an administrative agency charged with examining a claimant's medical records found objective support for the disability determination. *See Calvert*, 409 F.3d at 294. In the present case, none of the medical reviewers addressed the contrary disability findings by the SSA nor does Defendant LINA discuss the contrary SSA decision in its denial letters. [*See* A.R. at 35-36, 209, 280.] Keeping in mind the temporal differences, the Court finds that the failure to consider the SSA decision in this case weighs in favor of an arbitrary and capricious decision.

In light of the factors weighing in favor of finding an arbitrary and capricious decision discussed above, the decision to terminate Plaintiff Edwards disability benefits must be reversed, and the Court will grant Plaintiff Edwards' motion as to his claim for denial of benefits.

### C.    Procedural Violation

####     1.    Standard of Review

The arbitrary and capricious standard of review applies to the denial of coverage decision itself when the plan in question gives broad discretion to determine claims.  *See Bruch*, 489 U.S. at 109.  However, to the extent Plaintiff Edwards raises a procedural claim, the question of whether the procedure employed in denying the claim meets the requirements of 29 U.S.C. § 1133 is a legal question which the Court must review de novo.  *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir. 1996).

####     2.    Requests for Information

In addition to his arguments that Defendant LINA acted arbitrarily and capriciously, the Court considers Plaintiff Edwards' procedural argument.  In a letter to Defendant LINA dated August 16, 2006, Plaintiff Edwards' counsel made several requests for information, including (1) a copy of the entire claim file and all documents, records and other information upon which your company relied for its benefit determination in the above-referenced matter; (2) a copy of any committee minutes or recordings relevant to your determination, the names and credentials of your consulting medical or vocational professionals and any e-mail communications; and (3) the applicable policy with some sort of indication or proof that the

34

policy you send to me is the appropriate policy for the time period applicable to Plaintiff Edwards' claim. [A.R. at 263-65.] Plaintiff Edwards' counsel also stated that he was "interested in taking the examination under oath of each of your consulting medical or vocational professionals in order to understand the relationship between your company and the consultants, the scope of information provided to the consultants, the manner in which the consultations take place and to understand the basis of their opinions and thus the basis for your denial." [A.R. at 264.] On August 22, 2006, Defendant LINA forwarded a copy of the requested claim file to Plaintiff Edwards. [A.R. at 253.] On August 29, 2006, Plaintiff Edwards' counsel sought copies of any consultant reports and access to speak with the consultants about Plaintiff Edwards' condition. [A.R. at 241.] On November 9, 2006, Defendant LINA forwarded a copy of the claim file to Plaintiff Edwards' counsel. [A.R. at 205.] On March 29, 2007, Plaintiff Edwards' counsel requested the opportunity to speak to Defendant LINA's vocational rehabilitation counselor. [A.R. at 43.] On May 1, 2007, Plaintiff Edwards' counsel sent a letter requesting to take examinations under oath of Defendant LINA's consultants, reports and notes associated with their work, and any new information added to the file. [A.R. at 21.] On May 15, 2007, Defendant LINA sent a copy of the requested information from the claim file, but it stated "we do not provide recorded statements." [A.R. at 18.]

In the present case, Plaintiff Edwards contends that he was not given the opportunity for a full and fair review by Defendant LINA, as provided by 29 U.S.C. § 1133. Title 29 U.S.C. § 1133 provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall--
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Full and fair review consists of "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Marks*, 342 F.3d at 461 (6th Cir. 2003) (citing *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992)). Plaintiff Edwards contends that he was denied the opportunity for a full and fair review because Defendant LINA did not send its consultant reports until after the final denial and denied access to other information. Thus, Plaintiff Edwards argues that he was not allowed to address the accuracy and reliability of that evidence prior to the final determination. Defendant LINA contends that it provided Plaintiff Edwards the opportunity for a "full and fair review" because it substantially complied with the requirements of 29 U.S.C. § 1133.

The federal regulations provide guidance as to what is needed to provide a claimant with a reasonable opportunity for a full and fair review under 29 U.S.C. § 1133(2). In light of Plaintiff Edwards' contention that Defendant LINA denied him access to relevant information, the relevant regulation is 29 C.F.R. § 2560.503-1(h)(2)(iii), which provides:

36

*Full and fair review*. Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures– . . .

(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(h)(2)(iii).

Paragraph (m)(8) provides:

A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information

(i) Was relied upon in making the benefit determination;(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

In light of the communications by Plaintiff Edwards' counsel discussed more fully

above, the requests for information can be divided into the following general categories: (1)

written records, reports, and documents in the claim file; (2) access to examine under oath

37

Defendant LINA's consultants; and (3) the "applicable policy." To the extent Plaintiff Edwards contends he was denied access to written documents in Defendant LINA's possession, the Court finds that this contention is not supported by the administrative record. Each time Plaintiff Edwards' counsel requested documents from the claim file, Defendant LINA complied and sent copies to Plaintiff Edwards. [A.R. at 18, 205, 253.] A November 7, 2006, phone record shows that Plaintiff Edwards' counsel advised Defendant LINA "that they are not waiting on information from us." [A.R. at 697.] Furthermore, there are multiple copies of many of the documents in the administrative record. Though Plaintiff Edwards contends that he was denied access to Ms. Valentine's report prior to the final denial decision on April 24, 2007, the Court notes that the regulations only state that documents and information be provided "upon request." 29 C.F.R. § 2560.503-1(h)(2)(iii). The Court's review of the administrative record reveals no request by Plaintiff Edwards' counsel for Ms. Valentine's report until May 1, 2007, after the final denial decision on April 24, 2007. [A.R. at 21.] Thus, the administrative record shows consistent compliance with the requests for written information in the claim file by Defendant LINA.

Likewise, the Court disagrees with Plaintiff Edwards that the denial of requests to examine under oath Defendant LINA's consultants was a violation of 29 U.S.C. § 1133. The regulations describe what constitutes a "document, record, or other information . . . relevant to a claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii). While the reports generated by the consultants likely fall within the regulatory definition of "document, record, or other

38

information," the Court questions whether the consultant themselves are a "document, record, or other information." *Id.* Additionally, access to consultants for an examination would not be " relied upon in making the benefit determination," "submitted, considered, or generated in the course of making the benefit determination," "demonstrate[] compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination, or "constitute[] a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis." 29 C.F.R. § 2560.503-1(m)(8). Thus, the Court is unpersuaded by Plaintiff Edwards' argument that he was denied the opportunity for a full and fair review when Defendant LINA rejected his request to examine the consultants under oath.

The remaining "request" for information involves the request for the "applicable policy" by Plaintiff Edwards' counsel in a letter dated August 16, 2006. [A.R. at 263-65.] Defendant LINA forwarded copies of the "claim file" on August 22, 2006, and November 9, 2006, and it also sent updated requested information to Plaintiff Edwards' counsel after he reiterated "all my previous requests for information and would request any new information that has been added to the claim file." [A.R. at 18, 21, 205, 253.] However, the "applicable policy" is not part of the administrative record, indicating that it was never sent to Plaintiff Edwards by Defendant LINA. For purposes of the federal regulations, relevant documents include those that were "relied upon in making the benefit determination" as well as those "submitted, considered, or generated in the course of making the benefit

determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8). In the present case, each of Defendant LINA's denial letters cite to "your policy" when defining the term "Disabled." [A.R. at 28, 201, 276.] Thus, the "policy" was relied upon in Defendant LINA's denial decisions and, thus, falls within the scope of relevant documents as defined in 29 C.F.R. § 2560.503-1(m)(8).

Nevertheless, Defendant LINA's failure to send Plaintiff Edwards the "applicable policy" does not necessarily mean there was a violation of 29 U.S.C. § 1133 because the Sixth Circuit does not require strict compliance with the requirements of this statute. *Wenner v. Sun Life Assurance Co. of Canada*, 482 F.3d 878, 882 (6th Cir. 2007). The "substantial compliance" test "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Id.* (citation omitted). Thus, "[i]f the communications between the administrator and participant as a whole fulfill the twin purposes of § 1133, the administrator's decision will be upheld even where the particular communication does not meet those requirements." *Id.* (citation omitted).

In the present case, each of Defendant LINA's denial letters informed Plaintiff Edwards that the "applicable policy" and related information were available from his employer. Each letter directs Plaintiff Edwards to review the "insurance booklet, certificate or coverage information available from [Plaintiff Edwards'] employer to determine if

[Plaintiff Edwards] is eligible for additional benefits." [A.R. at 27, 203, 278.] Though Defendant LINA did not reiterate this information in each of its responsive communications to Plaintiff Edwards' requests for information, the Court "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Wenner*, 482 F.3d at 882 (citation omitted). Because the denial of benefits letters sufficiently informed Plaintiff Edwards that he could obtain the information he requested from his employer.

Furthermore, even though the definitions of "Disabled" in Defendant LINA's communications with Plaintiff Edwards were not worded identically to the plan document's definition, the definitions were substantively the same. The plan document provides:

> "Disabled" shall mean (and subject to the last sentence of this Section 2.9), with respect to a Covered Participant, that, as a result of physical or mental impairment, he or she is prevented from performing the usual duties of his or her occupation; provided, however, that after a Covered Participant has been Disabled for a period of 24 continuous months, he or she shall continue to be considered Disabled only if and while:

> (a) In the case of a Covered Participant whose disability is caused by other than a mental or nervous disorder, he or she is unable to perform the essential functions of any business or occupation for which he or she is reasonably suited by education, training, experience and physical ability, provided that if at any time the Committee (in its sole discretion) determines that the Covered Participant could, with rehabilitation or training, become able to perform the essential functions of any business or occupation (which pays at least 80% of his or her pre-disability Monthly Salary), the Covered Participant no longer will be considered Disabled. . . . The determination of whether a Covered Participant is Disabled shall be made by the Committee (or its delegate) in its sole discretion.

[Doc. 40-3 at 10-11.] The definitions of "Disabled" provided in Defendant LINA's communications with Plaintiff Edwards accurately reflected this definition to the extent it was pertinent to him.[1] The June 14, 2006, and November 21, 2006, denial letters both defined "Disabled" as "unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified for based on education, training, or experience." [A.R. at 201, 276.] Similarly, the April 24, 2007, letter stated that "you must be unable to perform any Reasonable Occupation, which is any gainful activity that you could be expected to perform satisfactorily in light of your age, education, training, experience, and physical and mental capacity." [A.R. at 28.] Though the wording may be different, the substance is the same, which satisfies the Sixth Circuit's "substantial compliance" standard.

Accordingly, the Court will grant Defendants' motions for judgment on the administrative record to the extent Plaintiff Edwards claims a procedural violation.

---

[1]The Court recognizes that Defendant LINA's letter dated November 21, 2006, stated that the "any occupation" standard went into effect after 60 months even though the plan document provides for a 24-month period. Nevertheless, this temporal difference is not pertinent in the present case since there is no dispute that the "any occupation" standard was applicable to Plaintiff Edwards under either the 24 or 60 month period. [*See* A.R. at 201.]

**D.     29 U.S.C. § 1132(c)(1)**

In his amended complaint, Plaintiff Edwards alleges Defendant LINA is liable for statutory penalties under 29 U.S.C. § 1132(c)(1) for allegedly denying him access to information.[2]  Title 29 U.S.C. § 1024(b) provides:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C. § 1024(b).  Under 29 U.S.C. § 1132(c)(1), a plan administrator failing to comply with 29 U.S.C. § 1024(b)(4) "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132(c)(1).  ERISA defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A).

---

[2]The Court notes that Plaintiff Edwards does not seek statutory penalties under 29 U.S.C. § 1132(c)(1) against Defendant Plan. [*See* Doc. 48 at 7.]  He does seek such statutory penalties against Defendant Aegon.  Because Plaintiff Edwards' motion does not address the claim against Defendant Aegon and Defendant Aegon has not had the opportunity to file any dispositive motions due to its addition as a defendant in this matter after the filing of the present motions, the Court will only address the § 1132(c)(1) claim to the extent it is applicable to Defendant LINA.

43

In the present case, the plan document identifies "Transamerica" as the "administrator" with respect to the ERISA Plan, so Defendant LINA is not the "plan administrator." [Doc. 40-3 at 16.] The Court also notes that Defendant LINA's consulting agreement expressly states that it "is not the Plan Administrator with respect to the Plan, as that term is used within ERISA." [A.R. at 6.] Thus, the statutory penalties provided by 29 U.S.C. § 1132(c)(1) are inapplicable to Defendant LINA. Though the plan document expressly identifies "Transamerica" as the plan administrator, Plaintiff Edwards contends that Defendant LINA operated as a de facto plan administrator. He argues that Defendant LINA would otherwise have no incentive to provide the name of the Plan Administrator if it was not subject to the statutory penalties of 29 U.S.C. § 1132(c)(1).

The Sixth Circuit has expressly recognized that "[o]nly a plan administrator can be held liable under section 1132(c)." *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992). Thus, liability for failure to supply the requested information cannot be imposed on Defendant LINA pursuant to § 1132(c) because it is not the designated plan administrator. Though Plaintiff Edwards contends that Defendant LINA acted as a de facto administrator, the Sixth Circuit previously rejected a plaintiff's "de facto" administrator argument because "[t]he law in this Circuit is clear." *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001). In *Brantner*, the Sixth Circuit also noted the "lack of precedent for expanding the statutory definition of a plan administrator under ERISA." *Id.* Notably, Plaintiff Edwards has not presented any authority subsequent to *Branter* suggesting

44

the viability of his de factor administrator argument. The Court further notes that a violation of 29 U.S.C. § 1133 claim does not necessarily create liability under 29 U.S.C. § 1132(c) because only a plan administrator can be held liable under section 1132(c). *See VanderKlok*, 956 F.2d at 618. In light of all this, the Court will grant Defendants' motions for judgment on the record to the extent Plaintiff Edwards seeks statutory penalties under 29 U.S.C. § 1132(c)(1) against Defendant LINA.

### E.    REMEDY

In light of the above, the Court must now determine the proper remedy in this case, retroactive reinstatement of benefits or remand to the administrator for a renewed evaluation of Plaintiff Edwards' case. The Sixth Circuit has recognized that "the appropriate remedy generally is remand to the plan administrator" where the "'problem is with the integrity of [the plan's] decision-making process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled.'" *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (citing *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31-32 (1st Cir. 2005)); *see also Biljan v. Aetna Life Ins. Co.*, 189 F. App'x 423, 426 (finding remand proper in the case where the administrator acted arbitrarily and capriciously in terminating the claimant's benefits). In other words, remand is appropriate in cases where "the adequacy of claimant's proof is reasonably debatable." *Cooper*, 486 F.3d at 172.

In the present case, the Court believes that it is not clear that Plaintiff Edwards is entitled to LTD benefits. It is only clear that Defendant LINA acted arbitrarily and

capriciously in denying those benefits. As a result, Plaintiff Edwards' claim will be remanded to Defendant LINA for further proceedings consistent with this opinion.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff Edwards' Motion for Judgment on the Administrative Record [Doc. 30] is hereby **GRANTED in part** as to the denial of benefits claim. Defendant LINA's Motion for Judgment on the Record [Doc. 26] and Defendant Plan's Corrected Motion for Judgment on the Administrative Record [Doc. 40] is hereby **GRANTED in part** as to the breach of fiduciary duty, procedural violation, and statutory penalty claims. The Court notes that this memorandum and order does not address Plaintiff Edwards' claims against Defendant Aegon. Thus, judgment in this case will not be entered until the rights and liabilities of all the parties in this matter are resolved. *See* Fed. R. Civ. P. 54(b).

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE